Bermudian Springs School District et al., Petitioners *v.* Commonwealth of Pennsylvania, Department of Education, Respondent.

Argued September 12, 1983, before Judges ROGERS, WILLIAMS, JR. and CRAIG, sitting as a panel of three.

*John D. Killian, Killian & Gephart,* for petitioners.

*Ernest N. Helling,* Assistant Counsel, for respondent.

OPINION BY JUDGE WILLIAMS, JR., May 16, 1984:

This case raises the issue of the allocation under Pennsylvania law of responsibility for educating handicapped children. The case arose when, in October of 1978, the Board of Directors of the Lincoln Intermediate Unit[1] (hereinafter, "the LIU") adopted changes to its special education plan. The changes provided for suspension of operation by the LIU of classes for educable mentally retarded students (hereinafter, "EMR classes") in four constituent school districts, including the instant petitioners, Bermudian Springs, Conewago Valley, and Littlestown Area School Districts. The LIU's decision placed responsibility for operation of all EMR classes on each individual school district, with the LIU providing support services and supervision for such classes.[2] The plan

---

[1] The Commonwealth's public school system's intermediate units were established by Sections 901-A through 921-A of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* added by Section 1 of the Act of May 4, 1970, P.L. 311, 24 P.S. §§9-951 to 9-971.

[2] Prior to 1973, all EMR classes were operated by the county boards of school directors. With the creation of intermediate units, planning and service functions previously performed by the county boards were shifted to the intermediate units. In March of 1973, the LIU adopted a special education plan which called for each in-

amendment was approved by the Department of Education (Department) on December 5, 1978.

The four dissenting districts thereafter sought reconsideration by the Department of its decision to approve the LIU's plan modification. Reconsideration was denied, and the districts were informed that approval of the amendments would stand. In May of 1979, one of the four districts acceded to the plan changes. The other three filed a petition for review in this court, wherein they challenged the failure of the Department to hold a hearing on whether the LIU's plan amendment should be approved. This Court, by order dated June 29, 1979, remanded the case with directions that the petitioners be afforded a hearing. The remand was without prejudice to the petitioners renewing their petitions for review if they failed to achieve their desired relief through the administrative process.

Hearings were held on June 9, 10 and 30, 1980 before a hearing officer designated by the Department. The hearing officer submitted a report to the Secretary of Education concluding that approval of the

dividual school district within its jurisdiction to operate EMR classes in accordance with the educational needs of the children residing in each district. For reasons not clear from the record, the LIU operated EMR classes in seven of its constituent school districts, while all of the other districts operated their own classes. When another school district began operating its own classes in accordance with the LIU special education plan, the number of school districts in which the LIU operated EMR classes fell to six. In June of 1978, the Board of Directors of the LIU directed the LIU administrator to contact these six school districts about assuming responsibility for operation of EMR classes. Two districts agreed to a plan to assume responsibility for the classes. The petitioners and one other district refused to assume responsibility. Thereafter, on October 3, 1978, the Board of the LIU adopted a special education plan amendment which provided that the LIU would cease operating EMR classes in the remaining four districts as of July 1, 1979.

LIU's plan amendment was appropriate. After considering exceptions filed by the petitioners to the report, the Secretary issued an adjudication and order adopting the findings and conclusions of the hearing officer. Whereupon, petitioners filed their second petition for review in this court. The petitioners' position is that the LIU was not authorized to modify its special education plan to terminate EMR classes in their districts without their consent. Furthermore, they contend that the Secretary's order is invalid because the Department failed to show that the petitioners can effectively and efficiently provide for the EMR classes.

We find no support for the petitioners' contention that the LIU had an obligation to continue to operate EMR classes in their districts unless each district consented to the cessation of such classes. On the contrary, the authorities establish overwhelmingly that the primary responsibility for identifying all exceptional children and developing appropriate educational programs[3] to meet their needs is placed on the local school districts. That is the import of the Public School Code, which at Section 1372(4)[4] reads:

> Special Classes or Schools Established and Maintained by School Districts. Except as herein otherwise provided, it shall be the duty of the board of school directors of every school district to provide and maintain, or to jointly provide and maintain with neighboring districts, special classes or schools in accordance with the approved plan. . . . If the approved

---

[3] 22 Pa. Code §13.1 defines an appropriate program as "[a] program of education or training for exceptional school-aged persons which meets their individual needs as agreed to by a parent, school district, or intermediate unit personnel; or as ordered by a hearing officer; or upon appeal as ordered by the Secretary of Education."

[4] 24 P.S. §13-1372(3).

plan indicates that it is not feasible to form a special class in any district or to provide such education for such child in the public schools of the district, the board of school directors of the district shall secure such proper education and training outside the public schools of the district or in special institutions, or by providing for teaching the child in his home. . . .

In contrast, Section 1372(4) of the Code[5] prescribes that the powers and duties of the intermediate unit are ". . . to provide, maintain, administer, supervise and operate *such additional classes or schools as are necessary* or to otherwise provide for the proper education and training for all exceptional children who are not enrolled in classes or schools maintained and operated by school districts or who are not otherwise provided for." (Emphasis added.)

The regulations of the Department are even more explicit in placing the primary responsibility for development and operation of special education programs on the local school districts. 22 Pa. Code §13.11 (b) identifies the responsibilities of the school districts and the intermediate units as follows:

The primary responsibility for providing an appropriate program of education or training, or both, shall be that of a school district. Where such school district board cannot provide an appropriate program effectively and efficiently, it shall use the services of the intermediate unit. The services of approved private schools, state schools, and out-of-state institutions may be used, as hereinafter provided, where intermediate unit boards and school district boards agree that they cannot provide ser-

---

[5] 24 P.S. §13-1372(4).

vices effectively and efficiently for handi-
capped schoolaged persons.[6]

Finally, this court has repeatedly cited the primacy of
the school districts' responsibility for special educa-
tion programs. *See e.g. Krawitz v. Department of
Education,* 48 Pa. Commonwealth Ct. 155, 160, 408
A.2d 1202, 1205 (1979) ("It is the responsibility of the
school district first and the intermediate unit next to
provide programs of education or training. . . .");
*Savka v. Department of Education,* 44 Pa. Common-
wealth Ct. 62, 403 A.2d 142 (1979).

In light of the foregoing authorities, there is no
question that the LIU was not bound to continue EMR
classes absent a showing that the petitioners them-
selves could not efficiently and effectively provide an
appropriate educational program for EMR children
in their districts. We find no basis for holding that by
operating the classes in petitioners' districts for sev-
eral years, the LIU was estopped from discontinuing
their operation. Nor do we detect any factual or legal
error in the Secretary's conclusion that the amend-
ment procedure utilized by the LIU was valid.

Finally, we find no error in the Secretary's conclu-
sion that the petitioners failed to show that they could
not operate EMR classes efficiently or effectively.
The petitioners do not contend that they satisfied this
burden. Rather, they assert that the burden was upon

---

[6] This allocation of responsibility for providing special education
program is echoed in 22 Pa. Code §341.22(a), which states:

(1) *District operation.* Special education programs and ser-
vices shall be developed and operated by a school district
when the school district is able to provide effective and ef-
ficient programs, including adequate housing and super-
vision.

(2) *Intermediate unit operation.* Special education pro-
grams and services shall be developed and operated by the
intermediate unit when the school district cannot effec-
tively and efficiently support such programs and services.

the Department to establish that the petitioners *could* efficiently and effectively operate EMR classes. Such an allocation of the burden would be inconsistent with the school districts bearing primary responsibility for providing special education programs. Neither the statute, regulations nor logic suggest that school districts may relieve themselves of their statutory duty by merely withholding their consent to plan modifications and requiring other agents in the public education system to prove the districts' capacity to perform their educational responsibilities. In light of the petitioner's failure to present substantial evidence —indeed any evidence—that they could not effectively or efficiently operate EMR classes, we must affirm the Secretary's conclusion that the record does not justify imposing responsibility for operation of the classes on the intermediate unit.

Accordingly, we affirm the order of the Secretary.

ORDER

AND Now, this 16th day of May, 1984, the Order of the Secretary of the Pennsylvania Department of Education is affirmed.